The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. We have two cases on for hearing this morning. First up is 25-4033, United States v. Bendann. Mr. Orenberg. Good morning, Your Honors. May it please the Court. My name is Alan Orenberg and I represent Mr. Bendann in this appeal. There are four issues in this case. The first one arose pre-trial. That's the Miranda issue and the iPhone. And the second arose just prior to commencement of jury selection. That's the competency issue. I plan to focus on those two arguments today. However, there is a Jenks argument which occurred during trial and then an after trial issue about the sentencing. Your Honors, I'm going to start with the competency issue. It's my position that Mr. Bendann was unable to assist his defense attorneys under 18 U.S. Code 4241 because he had expressed suicidal ideations, not just prior to the trial but about a week before the trial. He had communicated suicidal ideations about himself and then just prior to the trial there was a communication with his father which was disclosed just prior to the commencement of jury selection to the defense counsel. Was there any medical evidence here? Well, I think as Your Honors know, there is but they're not properly in the record at this time. This is medical records I asked the Court to either remand. But none was presented at the hearing? None was presented at the hearing. But under Rule 10E1, I believe this Court could accept those records which were submitted with my motion back in March because the record doesn't otherwise truly disclose what happened at trial. I think this Court has the power to do that. I know that you decided not to do it at the time I filed the motion. But I think that these medical records do give additional information to the Court. Well, let's assume that we don't agree with you on the medical records and we're limited to the record and you started out by arguing that your client had expressed suicidal ideations on at least one, maybe more occasions. Is it your position that anytime that a criminal defendant expresses suicidal ideations that a district court is bound to order a competency examination? No, not at any time. But the fact that this happened so close to the commencement of trial a week before and the morning that the jury selection was supposed to begin, I think this Court logically could agree with me that Mr. Benden was not focused on assisting his counsel. He was focused on his own mental health, if you will, that morning. I would imagine that a lot of criminal defendants are under a good deal of stress and I think certainly Mr. Benden expresses the satisfaction with a great number of things including having to get up early in the morning to be ferried over to the courthouse. Apparently the food was not to his liking and a number of other things, but didn't the district court engage with Mr. Benden to inquire as to all of those things and ultimately concluded that there was no need for a competency evaluation? What is our standard of review with respect to that? Well, I believe, as the Court is aware, the U.S. v. Mason case from 1995, the reasonable cause standard. But on appeal, what are we... Oh, on appeal, it's abuse of discretion. That's a pretty tough standard, right? I know it's a tough standard, but I mean, what's the harm? I mean, on the morning of trial or just before jury selection, defense counsel raised a legitimate concern with the district court with a very well-seasoned and accomplished district court judge. I agree with that. What would have been the harm to delay the trial and send Mr. Benden for a mental health evaluation, a legal competency evaluation? Well, that's an entirely different standard. What would have been the harm? Is that an abuse of discretion in the district court deciding otherwise? Given all that he had seen and observed, that he didn't think it necessary to grant a competency examination? And didn't counsel, wasn't counsel themselves a little bit uncertain as to what was going on here? I think counsel was a little uncertain. As you can imagine, on the morning of trial, counsel... And yes, there were two attorneys in that case at the time, two very well-seasoned, accomplished attorneys. But they have a lot to do on the morning of trial and the week leading up to trial. And to have this particular issue arise on the morning of jury selection, perhaps counsel... And I don't know. I don't know for sure, but I could imagine in my own experience, having done dozens of trials, that that issue arising on the morning of trial would sort of cause me not only to file the motion, but to be concerned about my client's well-being and able to assist counsel. I think your honors are aware that in Mason, this court said that even a defendant who appeared competent, who was mentally alert and who was understanding what was going on, still required a competency hearing. And then the court had another occasion in the general case to sort of follow up with that. It's still... It's my position that the court did abuse its discretion by not ordering the competency evaluation that morning. Now, I know the toothpaste is out of the tube, and that's sort of what happened in the Mason case also. But Mr. Benden should have been afforded the opportunity to have the competency screening before the trial began. If there are no other questions on this issue, I'll move on to the Miranda issue. And I think the central focus here should be on whether or not did Mr. Benden exercise his right to an attorney. The facts support that. Mr. Benden... Mr. Benden was in custody. I think everyone agreed on that. He was read his Miranda rights. He was surrounded. He was in his home. He was seated. He was surrounded by numerous law enforcement officers. And the detective, Detective Markle, says to him, I would like to talk to you in reference to this investigation. There's a lot to be learned on both ends. And Mr. Benden clearly... Mr. Benden, excuse me, clearly says, can I do it with my attorney? She said not to say anything to anyone. And Detective Markle replies, sure, sure. There's an acknowledgment on Detective Markle's part that Mr. Benden has asked for his attorney to be present during any questioning in this case. Nevertheless, Detective Markle goes on, because she had the biometric warrant for the iPhone, to place the iPhone in front of him to see if it would open or engage. Nothing wrong with that? No, there's nothing wrong with that. I agree with you. I agree with you. So where is the compelled... Let's assume we agree with you that he had exercised his Miranda rights. He was in custody, and therefore he could not be questioned. But there's only a violation if there is compelled testimony. So what's the compelled testimony? Well, the compelled was, and I forgot to also mention, she had said to him that there is a sealed warrant, okay, which further impresses upon Mr. Benden the gravity of the situation. And when she puts the phone in front of his face, and the phone... I don't have an iPhone, so I don't know how this happens, but it prompts you to put in the passcode. And he just goes ahead and does at least partial. Without any direction from the detective, right? That's correct. So what is the questioning and compelling testimony? Just putting the phone in front of his face. But she was authorized to do that, pursuant to the warrant. Right, but it's my understanding on the biometric warrant that it's supposed to be that the face opens up the phone, not the numbers or something that equivocates to a passcode. No, that's exactly right. But she was authorized to put the phone in front of his face, and when that didn't work, he immediately, without any prompting from the detective, reached out and punched in his passcode. So I guess we're, at least I am, personally struggling to find exactly where the compelled testimony is. Well, it was compelled testimony because it's my position that she put the phone in front of his face, which she was authorized to do. And that was all she was authorized to do. But that's all she did. But what she did was she somehow, she says on the record that she saw the first four digits of a six-digit passcode. And that she deduced from that, those first four digits, that they were partially his birth date. Either she or another detective who was working on the case. And then they finished the opening process by putting in the birth year. So is that the Miranda violation? I think the Miranda violation is that she held the... Even though he said, I want to have my attorney present. She went ahead and put the phone in front of his face for half a dozen seconds. The quote he read wasn't quite as definitive as that. I'm sorry, Judge Agee. I thought he said he asked the question about whether he should have his attorney present. He didn't say demonstratively, I want my attorney present. Don't ask me any questions. His point is that it could be taken in several different contexts. Of course, but he said, can I do it with my attorney? At that point, she knows he has an attorney. That's a question, not a demonstrative statement. The cases have distinguished between the two in the past. And sometimes that's where the court will go to the audio recording to see the intonation and how it was said. Well, the cases are replete with situations where the suspect under interrogation or the arrestee did not already have an attorney. He goes, I want an attorney. Give me an attorney. Mr. Benden already had an attorney. I think that's one of the differences here in this case. He already had an attorney. Let's assume that we would agree with your argument. Why wouldn't the inevitable discovery rule apply here? I mean, it was a pretty far-reaching warrant. Wouldn't they have been authorized to do a forensic search under the warrant? Right, well, yes, but the district court did not, in the suppression hearing, did not fully develop for the record the facts that would support an inevitable discovery conclusion. In fact, Judge Berdar said, I'm not even going there today, in a footnote. But we can read the warrant, and if the warrant would authorize that, I'm not sure I understand the argument. Well, I'm saying to this court that the district court did not make any findings to support the inevitable discovery doctrine in this case. Do you have anything else, Mr. Rumberg? Well, yes, Your Honor. I guess I'll move on to the Jenks issue, about the Jenks request that was made by trial counsel concerning the witness, Mr. Halbert, young Mr. Halbert, in the case. And I would just like to emphasize to the court, and the government said we don't have anything, but what is strikingly unusual about the government saying that in trial is that at the same time that Mr. Halbert, or in the same period of time that Mr. Halbert was interviewed, so were his parents, in the same contextual setting, as I understand it. And there were Jenks, there was Jenks, excuse me, there was Jenks for his parents, but how could there not have been Jenks for Mr. Halbert, young Mr. Halbert, when at the same time the police did take notes of their interviews of his parents? I think that this, as I said, I ask the court to remand on that issue so that the district court could further develop what exactly happened concerning the Jenks request. And of course it's my position that defense counsel did say enough or present to the district court enough that the Jenks issue should have been fully developed, and it was not. Didn't Mr. Halbert say he didn't recall any notes being taken? He wasn't sure. As I remember the record, I don't have the transcript in front of me, but he said something to the point he wasn't exactly sure. He was young, he wasn't familiar with police procedures and taking interview notes and so forth. And did the government, or who represented below that there were no Jenks statements? Is that a representation? Who, if anyone from the government, represented below that there were no Jenks statements with respect to Mr. Halbert? The prosecutor. Okay. So what is there further to develop? Well, that the district court did not compel the prosecutor, the U.S. Attorney's Office to go check with the officers and do everything that is intended to making sure that there was or was not any Jenks reports. All right. Thank you. Thank you. I see that my time is about up. We've got some rebuttal left, so. Thank you. Ms. Munoz. Good morning, Your Honors. May it please the Court. MJ Kirsch Munoz for the United States. Mr. Benden is a child predator who used his position as a high school teacher to groom, exploit, and stalk his teenage student. A jury properly held him accountable for these crimes after a six-day and, by all accounts, gut-wrenching trial. Now Mr. Benden wants a do-over, but this Court should decline to give him one because none of his claims of error warrant upending the district court's sound rulings. We respectfully ask this Court to affirm. Unless Your Honors have a preference otherwise, I would like to jump right into the suppression issue here. And I'd like to start by specifically flagging what I believe to be, and perhaps what Judge Diaz believes to be, the most straightforward way of resolving this issue, which is to agree with the district court that Mr. Benden's act of entering his passcode was voluntary, which in turn limits the reach of the exclusionary rule. As Mr. Benden does not contest, the exclusionary rule does not apply to the derivative evidence of voluntary communications. So the only dispute is whether Mr. Benden's entry of his passcode was compelled. That is, whether his will was overborne or his capacity for self-determination was critically impaired by coercive police conduct. And considering that, do we just focus on the moment in which he, you know, the phone was placed in front of him and then he was, to your mind anyway, just instinctually reached out and punched in the code, or do we take in the entire environment from beginning to end, including the fact that the police showed up early in the morning with, you know, I guess it was a SWAT team toting rifles. He was initially handcuffed, I think, and then released, placed in a chair while people are rummaging around his townhome or apartment, and then the officer proceeds to read the warrant and, you know, puts the phone in front of him. That sounds pretty coercive to me and I think would be to most people. So do we take all that into account? And if so, why doesn't that cut in favor of the defendant? Your Honor, I think we do take the circumstances into account. I would suggest that maybe the preceding five minutes before the act of holding the phone up to his face and Mr. Bendan entering the passcode are perhaps the most relevant of these circumstances. And I think the record very clearly shows that this was a voluntary act, even taking into account these circumstances. Certainly by the time that Mr. Bendan is typing in his passcode, he was not handcuffed. You know, even earlier, he had not been subjected to shocking scare tactics like a flashbang or no-knock warrant. And by the way, I'm reading from the District Court's factual findings here, which are entitled to deference on clear-air review. Mr. Bendan was, quote, sitting peacefully, speaking calmly with Detective Markle. And, of course, Detective Markle did not say anything to the defendant before he entered his six-digit passcode, quote, unprompted. So there's no badgering, no pressure, no verbalizing at all. This is really not your paradigm involuntary in this case. I would suggest it's not even close to that. Okay. So can some of the cases that talk about phones, I guess, reason that a passcode or a password really isn't, you know, anything other than ownership of the phone is not incriminating evidence, so to speak. Is that rule as applicable, or do we look at a case with the crimes that are involved here, which are, as you know, you know, horrible, but nevertheless, the most likely source of the evidence might be a phone? Does that make any difference in terms of whether a password is incriminating from another offense? Your Honor, I'm not sure that does make a difference. Certainly in Oluyide, this court's decision in Oluyide, it did involve not, you know, child predation, but, you know, a serious set of crimes, and the defendant there had text messages and photos of her, you know, criminal activity on the phone that she had unlocked for the police. I guess the point is, certainly you could have, a phone could be a source of evidence in almost any crime, so I'm not suggesting it wouldn't, but in a case like this offense, it just seems like that's the most likely place you would ever go, and I'm just trying to figure out if we, you know, if we can hold, you know, to a sort of bright-line rule that passwords aren't likely to, aren't seeking incriminating evidence, but are really just ownership, if the nature of the crime would make that device the likely source of the incriminating evidence. Sure, Your Honor, and I'll repeat myself and say I really don't think that's relevant, and in this case in particular, in fact, the police didn't find anything on his phone. He had purported to delete all of the video evidence and text messages that he had with the minor victim, and so they were actually later found on his iCloud accounts. Now, I understand that it was through access to the password bank on his phone that the police were then able to access the cloud accounts, but, I mean, this is a case where the evidence that they found was actually a few steps removed from the unlocking of the phone, so I think that, you know, without speaking as to whether a bright-line rule should apply in all cases, I think the rule that OOED sets out about when something is incriminating should certainly apply to this case where the evidence that was found was a few steps removed from the unlocking of the phone. Did the search warrant here permit a forensic search of the phone? The search warrant permitted the detectives to unlock the phone via biometrics, so either facial recognition or fingerprint, you know, and there were further search warrants once they collected the devices that allowed, you know, the forensic collection of the evidence on the devices. So was that dependent upon opening the phone in the first instance? Yes, Your Honor. Okay. The other thing I will just touch on in this case is that I am not entirely confident that Mr. Van Dam's indication of his Fifth Amendment right to remain silent unless his attorney is present was indeed as clear and unambiguous as he makes it out to be. Didn't the officers think it was clear and unambiguous? That's correct, Your Honor. The officer did think that it was clear. Of course, this is an objective inquiry, so we don't have to take what she subjectively believed to be an indication as, you know, whether it was as clear and unambiguous as she did. And you think it's ambiguous because it was phrased in the form of a question as opposed to an affirmative statement? I think that's certainly a consideration, Your Honor. And he had a lawyer, right? He apparently had a lawyer already. Does that matter? I am not sure that matters. I actually don't really see the reason why that would be a legal distinction. But, you know, that is a difference that my friend on the other side points out. But I will say that, you know, the fact that this request, if we want to call it that, said, was phrased in question form, I think, definitely is relevant to the inquiry of whether this was as clear and unambiguous as he would now argue that it is. Well, let's just assume that he properly invoked his right to counsel. So what happens at that point? So at that point, you know, he's invoked, and then we move on to the four other different reasons why the suppression ruling, I think, was correct here. You know, that was our, you know, we analytically proceed through the other reasons why this was not a Fifth Amendment violation and therefore why. Why don't you recap those in a bridged version quickly for us? Sure. So one, Mr. Bendan did not unambiguously invoke his right to counsel. So there was no improper act in holding the phone up to his face. Two, Detective Markell's act of holding the phone up  Even if he did invoke his right to counsel, was the officer nonetheless authorized under the warrant to use the facial recognition feature? That's correct, Your Honor. And so when she, you know, put the phone up to his face, that was not an interrogation. And so, you know, that also, for that independent reason, was not a, did not trigger the Fifth Amendment cover. It looks like from the video that Mr. Bendan's response to the failure of the facial recognition was almost instantaneous to get up there and start punching numbers. But what if the officer had simply held the phone up there for an extended period of time, hoping that he would do what he did in this case, but it took longer? Would that make a difference? Your Honor, I think it's possible that could make a difference. Obviously, as you acknowledge, that's not the case we have here. I do think that though there could be other reasons in this hypothetical why the detective is continuing to hold the phone up to his face, maybe trying to re-trigger facial recognition, trying to adjust the angle of the face or the angle of the phone to do exactly what the warrant authorized the detective to do. Now, of course, as I said, that's not the case we have here. I mean, the whole interaction was nearly instantaneous. And so I don't believe that to whatever extent Detective Markle continued to hold the phone up to his face at, I guess, triggered the kind of Fifth Amendment violation that would cause concern. So just structurally or analytically, if we do assume that the defendant invoked his Miranda rights, you know, there's, there'd been discussion about voluntariness of what he did. But does that fall under the interrogation issue in Miranda? I mean, what's, I mean, obviously I understand outside of Miranda, there's the, you know, normal coercion, you know, analysis looking at all the circumstances. But once, you know, in deciding whether there's a Miranda issue, is it the interrogation prong where the voluntariness is relevant? Your Honor, I guess the way I think of this is the detective's act of holding up the phone, we ask whether that, the detective's act was, constituted an interrogation. And if we assume it did, then we ask whether Mr. Van Dam's response was voluntary. And so that's kind of how I see those two, you know, inquiries intersecting, if that helps. Well, is, I mean, I assume you take the position that holding up the phone isn't an interrogation, correct? Yes, that is, that is one of the positions that we take. And if it's not an interrogation, well, okay. And so, but if he responds, see, that's why I'm not really understanding. And so, I mean, if it's an interrogation, and if it's not interrogation, I mean, I guess those two issues just seem almost to be intertwined. I mean, you know, if it's not interrogation, I guess it's by, is it by definition voluntary? I think at that point, if it's not, if it's not an interrogation, then whatever Mr. Van Dam's response is does not, you know, whether... Constitutive violation. Right, exactly. And so, you know, I'll again point out that the government... Are those questions, I'm sorry to interrupt you, but is our standard of review on whether it's an interrogation and whether it's voluntary, those are questions of law, aren't they? I would agree with that, yes. And the factual findings... The factual findings, of course. That underlie them. Right.  And the last thing I'll just point out on this topic, of course, unless your honors have additional questions, is that the government does raise an avalanche of reasons for why the district court suppression ruling was correct. Your honors need by only one of them to find in the government's favor here. Of course, Mr. Van Dam needs to overcome all of them. And so, I would submit that to whatever extent this court or your honors individually have expressed skepticism as to one or two of these reasons that the government has offered, you know, I think we have a number of other avenues to uphold... So, the last in the, as you describe it, avalanche is the inevitable discovery argument. But Mr. Orenburg says the district court itself said, we're not going there, I'm not engaging with that. Does that somehow bar this court from going there? Your honor, I think that the district court did purport to disavow that it was making factual findings. But then again, in that footnote, it says because... Let me pull it up here. Because the pass code was the defendant's birthday, it was, quote, reasonably likely that law enforcement would have tried such a commonly used pass code when attempting to unlock the phone. So, I do, of course, acknowledge that the district court is saying, oh, we don't need to go there. But I do think that that is a factual finding on which this court can rest in inevitable discovery application. So, the logic behind that is, you knew the first four digits of the birthday and you would inevitably have put in the year of birth to finish the code. I think that's part of it, your honor. I would suggest that we don't even need to go so far as to say that the detective knew the first four digits. Because, of course, if we get to the point where we're talking about inevitable discovery... They shouldn't have done it. I got you. So, it would be inevitable if they didn't know the four digits that they would have used the birthday? Well, Detective Markle did testify at the suppression hearing that birthdays were a very common password. And then, of course, we have what the district court said. The other inevitable discovery component... So, how does the detective know that? I mean, what's the basis? I mean, the detective just can testify that it's common that people use their passwords. I mean, what is that? I mean, the birthdays? Yeah, what'd I say? Passwords? Yeah, yeah. I mean, what's... That's just kind of... A detective says it's common to use birthdays for passwords. Well, your honor, that's what happened here and I believe she was relying on her extensive experience. I will agree with you that it's... So, that's an expert opinion? I think... I'm not sure if we would call it an expert opinion as much as we would just call it an opinion based in, I think, a decade of law enforcement activity. But, you know, I did, in my brief, suggest another, I suppose, basis on which to find inevitable discovery, which is such as simply keep retrying the facial recognition. And the warrant, of course, did not set a limit on how many times you could try. So, you know, if it doesn't work the first time, you let it reset, you try it again. I think that that is another way in which it... You know, they would have inevitably opened the phone. Based on something you said earlier, the warrant at the time did not specifically authorize a forensic search and that required an additional warrant? Yes, that's right. The warrant allowed the seizure of the devices and, of course, opening the devices using biometric. Unless your honors have any additional questions on the suppression issue, I would like to just quickly, very quickly, respond on the competency issue by pointing out that I think a lot of hay is made over the lack of medical records or whether medical records should have been introduced into the record. Of course, medical records are never required before a district court can determine whether there is a reasonable cause to doubt a defendant's competency. And I, you know, as Judge Diaz pointed out, and colloquially with my friend on the other side, the district court had a very lengthy discussion with Mr. Bendan and found him not just competent but actually quite invested and demonstrating a mind that is, quote, razor sharp and quite aware of the circumstances in the issue. So I really think that we, certainly on abuse of discretion review, we defer to the district court's first-hand judgments. The one other thing I'll mention before I sit down is on the Jenks issue. I think we can jump right to harmlessness here. I mean, we don't have to because the standard is clear error and I think it is obvious that the district court did not clear the error in declining to compel the production of interview notes with the witness. But of course, any error in declining to acquire the production of interview notes is harmless because what Mr. Halpert said is cumulative of what his mother said, what his Gilman classmate said, and of course the overwhelming digital evidence that we have in this case. Unless your honors have any additional questions, I will save the remaining 18 seconds of my time. We respectfully ask this court to adjourn. Thank you very much. I think it's a bit of a red herring when the government tells your honors or suggests to your honors that if they had repeatedly put the iPhone in front of my client's face, at some point it would have opened. Therefore, the inevitable discovery rule trumps everything that we're arguing here. Again, I don't know the inner workings of an iPhone. I don't know the inner workings of biometrics and facial recognition on any phone or on any device. But the record doesn't support that argument. So again, I think that's a bit of a red herring. Your honor, I think the court is well aware that there are no magic words for invoking right to counsel.  Mr. Benden made an expression to Detective Markle, which she acknowledged. Sure, sure. Okay, we'll have your lawyer here at an appropriate time. But nevertheless, she went on, and I agree lawfully or properly put the phone in front of his face. But he did invoke his right to counsel. Now, Judge Guadalbom talked about, I guess, the functional equivalent of interrogation. And there was a functional equivalent of interrogation. As I argue in my brief and in my reply brief, after the biometrics failed, she put the phone up to his face, hoping that it would open. But for some reason, for reasons... But you concede that that was okay. Putting the phone in front of his face. That's the trouble. If that's not a problem, we could call it interrogation. But if you're conceding it's lawful based on the warrant, what else besides that would create a problem? The course of atmosphere within which that happened. I think everyone has agreed he was in custody. There were a SWAT team there that morning searching his house. All of that going on. But that's for sure. But if we assume that it's okay to put the phone there, it seems like you're saying it's okay to put the phone there, but then you're at the same time saying it's not okay to put the phone there if he does something in response to it. Well, I can't testify on behalf of my client, but obviously I've had discussions with my client about this very issue. And he felt that he was under an obligation. He was compelled to open that phone at that time. Again, I'm not trying to testify on his behalf here. But it was a testimonial communication. He was in custody for purposes of Miranda, Your Honor. I don't see how anything, you know, and again, he was unfamiliar with police tactics. He was not, he doesn't have any criminal history upon which he could have relied upon to think, oh, you know, the first time I did this, but now I'm talking it, I should do that. He had none of that. He had none of that experience. He was just in a situation, in a very scary situation, early in the morning, police officers come, police officers start slugging him, and he properly says, you know, my lawyer told me not to say anything. Okay, well, okay, sure, sure. We'll have an opportunity for you to have your lawyer here. And again, I know we're sort of going around the bush on this. The phone was put in front of his face, half a dozen seconds or so. We've all seen the video, and then he just, he puts in the first four digits of the pass code. I submit to the court, I argue to the court, that that was compelled testimony of my client, which was improper. Does the court have any other questions? Thank you very much, Mr. Orenberg. I'm going to ask the court to either dismiss the case or remand appropriate instructions to the district court. Thank you. Appreciate it. Mr. Orenberg, I see that you're court appointed. I want to thank you on behalf of the court for taking on the assignment. We appreciate your argument this morning representing Mr. Bendan as we do the argument of the government. We'll come down and greet both of you and then move on to our second and final case. Thank you.
judges: Albert Diaz, G. Steven Agee, A. Marvin Quattlebaum Jr.